IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIO L. LUTHER and<br>MARIO LUTHER, INC.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>KIA MOTORS AMERICA, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>) Civil Action No. 08-386<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

Defendant Kia Motors America, Inc., ("Kia") has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 3), arguing that Plaintiffs Mario L. Luther and Mario Luther, Inc. (collectively, "Plaintiffs"), have failed to sufficiently plead their claims of breach of contract and negligent misrepresentation resulting from the failed negotiations between the parties for Plaintiffs to be awarded a Kia motor vehicle franchise. For the reasons discussed below, Defendant's motion is denied without prejudice.

**I.   BACKGROUND**

    A.   Factual History[1]

Mario Luther is the apparently the president or chief executive officer of Mario Luther, Inc., a Pennsylvania corporation located in Homer City, Indiana County, Pennsylvania. Plaintiffs

---

[1] The facts in this section are taken from Plaintiffs' Complaint, Docket No. 1, Exhibit A.

own and manage several automobile franchises in the area.

In April 2007, Mr. Luther was contacted by representatives of Kia Motors America, Inc.,[2] to discuss the possibility of Plaintiffs becoming a Kia vehicle franchisee. A regional manager of Kia met with Plaintiffs in April 2007 in Homer City and the parties continued to discuss the possible franchise for several months. Kia representatives stated that in order to determine if Plaintiffs would be offered a Kia franchise in the local market area, Mr. Luther needed to provide confidential information concerning sales and customer satisfaction related to Plaintiffs' other dealerships, financial information, and assets. As requested, Mr. Luther provided this information.

On August 10, 2007, Plaintiffs met with Barbara Robinson, a Kia manager, to discuss the application for becoming a franchisee; ten days later, she advised them that they had been selected for a franchise. On August 20, 2007, at the direction of Defendant's employees, Plaintiffs submitted an application to the "Kia Facility Assistance Program," identifying themselves as a "Kia Dealer."

During August and September 2007, Defendant's agents and employees, specifically Barbara Robinson, Melanie Dougherty and Deborah D'Agostino ("Kia Agents"), advised Plaintiffs that Kia's policy was for potential franchisees to create a separate legal

---

[2] Kia Motors America, Inc., is a California corporation with its principal place of business in Irvine, California.

entity for the franchise. Plaintiffs subsequently formed "MCDL, Inc.," for the specific purpose of being awarded the Kia franchise. On September 18, 2007, Plaintiffs paid Defendant $15,000 in order to acquire signage for the new franchise. They also continued to provide extensive financial information to Defendant. All of these efforts, Plaintiffs allege, involved substantial effort and financial expense to comply with Defendant's demands.

According to the Complaint, despite these efforts, in October 2007, the Kia Agents failed and/or refused to submit Plaintiffs' franchise application to Kia's national office for approval.

B.  Procedural History

Plaintiffs filed suit against Kia in the Court of Common Pleas of Indiana County, Pennsylvania, on February 25, 2008. In their Complaint, they first allege that Defendant, through its employees, breached an oral contract to grant them a Kia franchise, despite Plaintiffs having fulfilled all the prerequisite obligations thereof. In Count II, Plaintiffs contend that on August 10, 2007, they entered into an oral contract with the Kia Agents under which those representatives promised to submit the franchise application to Defendant's national office for approval but subsequently breached that oral contract by failing or refusing to do so. Plaintiffs further allege in Count III that during August and September 2007, the Kia Agents represented to Plaintiffs that they had been selected for or granted the franchise and

induced Plaintiffs to act on that representation which the Agents knew at the time to be false. Finally, in Count IV, Plaintiffs allege that the Kia Agents falsely misrepresented to Plaintiffs that their application would be submitted to the national office for approval and Plaintiffs justifiably relied on those representations to their detriment.

On March 18, 2008, Kia filed a timely notice of removal pursuant to 28 U.S.C. § 1332(a) based on complete diversity of the parties and an amount in controversy greater than $75,000. Plaintiff did not object to removal.

Defendant filed the now-pending motion to dismiss the complaint on March 24, 2008, and Plaintiffs filed their response thereto on April 3, 2008, as directed by the Court. The motion is now ripe for decision.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332. Venue is appropriate in this district inasmuch as a substantial part of the events which are alleged to have injured Plaintiffs occurred in this district. 28 U.S.C. § 1391(b)(2).

## III. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant moves to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). The United States Court of Appeals for the Third Circuit has recently discussed how the Supreme Court

4

modified the standard of review for such motions through its ruling in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). *See* Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008).

We first note what has *not* changed in the wake of Twombly and Phillips. First, Phillips noted the Supreme Court had reaffirmed that Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." That is, the Court in Twombly did not impose a new heightened pleading requirement. Phillips, 515 F.3d at 231, *citing* Twombly, 127 S.Ct. at 1964. Second, the Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, id., *citing* Twombly, id. at 1964-65 and 1969 n.8. Phillips also noted that while the Supreme Court did not address the previously established rule about drawing all reasonable inferences in favor of the plaintiff when considering a motion to dismiss, it concluded "we do not read [the Twombly] decision to undermine that principle." Id. at 231.

At the same time, Twombly "disavowed" the standard which had been used for many years by courts considering motions to dismiss, that is, the complaint should not be dismissed "unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Phillips, 515 F.3d at 232, *quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957), and *citing* Twombly, 127 S.Ct. at 1968-69 (describing the phrase as "an incomplete, negative gloss on an accepted pleading standard.")  "After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Phillips, 515 F.3d at 233, *quoting* Twombly, 127 S.Ct. at 1969 n. 8.  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Id. at 234, *quoting* Twombly, 127 S.Ct. at 1965.

In an opinion handed down by the Court of Appeals in April of this year, the Court summarized its current application of Twombly. *See* Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315 (3d Cir. 2008).  The Court noted that when it had decided Phillips,

> [a]lthough the exact parameters of the Twombly decision were not yet known, we read Twombly to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level.  In other words, "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element.

Wilkerson, 522 F.3d 322, *citing* Phillips, 515 F.3d at 234, *quoting* Twombly, 127 S.Ct. at 1965.

### IV.  LEGAL ANALYSIS

Defendant's only argument in support of its motion to dismiss

6

is that a written agreement which Mr. Luther signed on behalf of himself and Luther Motors on June 28, 2007, precludes Plaintiffs from establishing the elements of either a breach of contract claim or a claim for negligent misrepresentation. (Defendant's Motion to Dismiss, Docket No. 3, "Def.'s Mot.") That is, prior to August 10, 2007, the date of the alleged oral contract between Plaintiffs and the Kia Agents, Mr. Luther had already signed a Kia Dealer Sales and Service Agreement ("the Franchise Agreement") which provided the "exclusive mode and manner for the formation of a contract for a Kia franchise." Because no executive officer of Kia ever signed the agreement, no enforceable contract was formed and thus the breach of contract claim must necessarily fail. (Def.'s Mot., ¶¶ 12-15.) Similarly, Plaintiffs cannot establish justifiable reliance, one of the essential elements of a claim for negligent misrepresentation under Pennsylvania law, because the Franchise Agreement explicitly states that "[n]o act, other than the written execution of a Kia Dealer Sales and Service Agreement by an Executive Officer of Kia shall constitute approval of this application by Kia." Consequently, any reliance by Mr. Luther on oral representations that Plaintiffs had been awarded or selected for a Kia franchise was neither justifiable nor reasonable. (Def.'s Mot., ¶¶ 18-21.) Therefore, Defendant argues, the entire complaint must be dismissed. In support of this argument, Kia provides the non-confidential portions of the Franchise Agreement.

(Docket No. 10, Exhibit A.)

In their response to the Motion to Dismiss, Plaintiffs argue they have adequately pled the elements of both breach of contract and negligent misrepresentation under Pennsylvania law,[3] together with facts in support of those claims. (Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Complaint, Docket No. 4, "Plfs.' Resp.") They point out they are not alleging a breach of the Franchise Agreement (which they concede Mr. Luther did sign), but rather of the oral contract formed on August 10, 2007. (Plfs.' Resp. at 6.) Moreover, Defendant's reliance on the Franchise Agreement at this point in the proceedings is improper because Plaintiffs' claims for negligent misrepresentation do not arise from the agreement, but rather from the oral promises that Plaintiffs would receive a franchise, or alternatively, that the Kia Agents would submit the application to the national office for approval. (Id. at 4-5.)

The threshold question before the Court is whether we may properly consider the Franchise Agreement submitted by Defendant. Generally speaking, in considering a motion to dismiss, the court is limited to the allegations as stated in the complaint and any

---

[3] Plaintiffs also argue that they have established the elements of a claim for detrimental reliance/promissory estoppel through the allegations pled in the Complaint. (Plfs.' Resp. at 5-6.) Because we agree with Defendant that it is improper to raise a new claim in the response to a motion to dismiss, we do not address that portion of Plaintiffs' brief. See P.Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 142 F. Supp.2d 589, 613-614 (D.N.J. 2001) (plaintiff may not amend the complaint by briefs or affidavits submitted on a motion to dismiss.)

documents the plaintiff has attached thereto.  The Third Circuit Court of Appeals has recently restated the circumstances in which a district court may consider a document which the defendant attaches as an exhibit to a motion to dismiss without converting the motion to a motion for summary judgment under Fed.R.Civ.P. 56, that is:

> The court may consider certain narrowly defined types of material . . . such as a document that is integral to or explicitly relied upon in the complaint.  A court may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."

Jones v. Middletown Twp., No. 06-3574, 2007 U.S. App. LEXIS 26179, *5 (3d Cir. Nov. 8, 2007), *quoting* Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("PBGC"), *cert. denied*, 510 U.S. 1042 (1994) (other internal citation omitted.)[4]

The purpose of this exception to the general ban on extrinsic documents is to prevent "a plaintiff with a legally deficient claim [from surviving] a motion to dismiss simply by failing to attach a dispositive document on which it relied."  Beverly Enters. v. Trump, 182 F.3d 183, 190, n.3 (3d Cir. 1999), *quoting* PBGC, *id.*

Kia argues that the Court may "look to relevant documents that relate to the claim," i.e., the Franchise Agreement, in determining whether Plaintiffs' reliance on the alleged oral contract and representations was justified.  (Defendant's Reply Brief, Docket

---

[4] The Court may also consider matters of "public record" in ruling on a motion to dismiss.  PBGC, 998 F.2d at 1196-1197.  No such documents are proposed herein.

No. 8, "Def.'s Reply," at 4.) We agree with Plaintiffs that "the issue of whether reliance on a representation is reasonable (or justifiable) is generally a question of fact that should be presented to the jury." Dilworth v. Metro. Life Ins. Co., 418 F.3d 345, 354 (3d Cir. 2005); see also Tran v. Metropolitan Life Insurance Company, 408 F.3d 130, 139 (3d Cir. 2005). Therefore, even if we were to consider the Franchise Agreement, it is not the role of the Court at this point to determine if Plaintiffs' reliance on the oral representations of the Kia Agents was justifiable.

Kia further argues that we should consider the Franchise Agreement because Plaintiffs have "referred to" it throughout the Complaint and have not disputed its authenticity. Defendant contends this Court may consider "undisputed documents referenced in the complaint *or* central to the plaintiff's claim." (Def.'s Reply at 4, n. 4, quoting Rogan v. Giant Eagle, Inc., 113 F. Supp.2d 777 (W.D. Pa. 2000) (emphasis added by Defendant.) We reject this argument for two reasons: first, we find Rogan readily distinguishable on its facts, and second, we conclude the court in Rogan may have inadvertently misstated the standard by phrasing the criteria in the alternative rather than the conjunctive.

In Rogan, the plaintiff was injured while working as a meat wrapper at one of the defendant's stores, but eventually was able to return to light duty work as a product demonstrator. When a

10

vacancy occurred in the meat department, she applied for it, only to be rejected in favor of a younger, non-disabled employee with less seniority. According to a letter from the defendant's director of employee and labor relations, Dale Giovegno, she had not been given the job because her medical conditions prevented her from performing all the duties required. Rogan, 113 F. Supp.2d at 780.

Rogan filed suit against her employer under the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 1201, *et seq.* Giant Eagle moved to dismiss, contending that Rogan had failed to file a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") within the prescribed 300-day statute of limitations. In support of its motion, the defendant provided Rogan's initial grievance to her union, the EEOC charge, and five letters between the plaintiff and the EEOC. In opposition to the motion, the plaintiff provided the ADA intake questionnaire, an affidavit she filed with the EEOC, and the letter from Giovegno. Rogan, *id.* at 781.

The court granted the defendant's motion to dismiss after determining it could consider certain documents without converting the motion to one for summary judgment. It concluded the EEOC charge and related documents, including the right to sue letter and the intake questionnaire, were either "undisputed documents referenced in the complaint or central to the plaintiff's claim, or

as information which is a matter of public record." Rogan, 113 F. Supp.2d at 782. The court also concluded it could consider the Giovegno letter since it was explicitly referenced in the complaint. However, the remaining submissions were neither mentioned in the complaint "nor essential to the plaintiff's claims," and the court declined to consider them. Id. at 783.

The viability of Rogan's ADA discrimination suit depended on the timeliness of her EEOC complaint, thus, the related documents were "essential" to her claims for relief. Here, however, the Franchise Agreement is not "central" or "essential" to Plaintiffs' claims. Plaintiffs do not allege, for instance, that Kia breached the Franchise Agreement, but rather that the Kia Agents made misrepresentations concerning the entire application process and breached an oral agreement made *after* the Franchise Agreement was signed. In short, while Kia's argument that the Franchise Agreement precludes such oral modifications may make the agreement essential to its defense, the document is not essential to the allegations in Plaintiff's Complaint.

Moreover, we disagree with Defendant's proposition that we may consider the Franchise Agreement because Plaintiffs have "referred to" it at numerous points in the Complaint. Rather, the Complaint refers to the "application" to become a Kia franchisee and it is clear the application process involves at least one other document in addition to the Franchise Agreement. For instance, paragraphs

12

13 and 14 of the Complaint state that on August 10, 2007, Plaintiffs were directed to complete and submit an application for the "Kia Facility Assistance Program" which they did within the next ten days. Plaintiffs subsequently allege that the Kia Agents breached an agreement to submit the "application for a Kia Franchise" after having negligently misrepresented that they would do so. (Complaint, ¶¶ 28 and 40.) As distinguished from <u>Rogan</u>, the only document explicitly "referred to" in the Complaint is the application for assistance; there is no mention of the June 28, 2007 Franchise Agreement or its contents. *See* <u>Brody v. Hankin</u>, No. 04-1376, 2005 U.S. App. LEXIS 18778, *10 (3d Cir. Aug. 29, 2005) (where the complaint "did not mention information" from a document submitted by the defendant with its motion to dismiss, the document "was off-limits to the District Court.")

As to our second point, we are concerned that <u>Rogan</u>, by stating that a court may consider documents "referenced in the complaint," as compared to those which are "central to the plaintiff's claim," may have expanded the holding of <u>PBGC</u> beyond the intent of the Third Circuit Court of Appeals which limits such documents to those on which the plaintiff's claims "are based." The Court of Appeals has also stated that a district court may consider "a document integral to or explicitly relied upon in the complaint" (*see* <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997), and <u>U.S. Express Lines, Ltd. v. Higgins</u>,

281 F.3d 383, 388 (3d Cir. 2002)) or "documents whose contents are alleged in the complaint and whose authenticity no party questions" (see Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002).) In each of those alternative constructions, however, it is clear that the test for considering extrinsic documents has two parts: the complaint must not only refer to the document in question, but it must also be central to the claims therein. Pryor, id. (documents which "the defendant attaches to the motion to dismiss *are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim.*") (emphasis in original). See also Andrako v. United States Steel Corp., CA No. 07-1629, 2008 U.S. Dist. LEXIS 37617, *8 (W.D. Pa. May 8, 2008), noting that the court may consider only documents on which "the plaintiff's claims are based;" In re Astea Int'l Inc. Sec. Litig., CA No. 06-1467, 2007 U.S. Dist. LEXIS 58238, *11 n.3, *18-*19 n.5, *21 n.7, and *24-*25 (E.D. Pa. Aug. 8, 2007), distinguishing between documents submitted by defendants on which the plaintiffs' claims were based and those on which they did not expressly rely; and Stratechuk v. Bd. of Educ., No. 05-4703, 2006 U.S. App. LEXIS 24907, *6 (3d Cir. Oct. 5, 2006), stating that a "prerequisite to consideration of [a]. . .document as a part of a motion to dismiss is that the plaintiff's claim relies on that document," and holding that the district court had erred when it considered "the official policy" of the Board of Education in

deciding the motion to dismiss, in part because the plaintiff had expressly argued his allegations were based on a different, more restrictive policy described in his complaint.

We conclude it would be improper to consider the Franchise Agreement in deciding the motion to dismiss. We further conclude that Plaintiffs' allegations concerning breach of an oral contract and negligent misrepresentation provide "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1963. Defendant's Motion to Dismiss is therefore denied without prejudice. The import of the Franchise Agreement may be revisited, if appropriate, at future stages of this proceeding.

An appropriate Order follows.

June __12__, 2008            _William L. Standish_
                             William L. Standish
                             United States District Judge