IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARIO L. LUTHER and )
MARIO LUTHER, INC., )
 )
    Plaintiffs, )
 ) Civil Action No. 08-386
    vs. )
 )
KIA MOTORS AMERICA, INC., )
 )
    Defendant. )

## MEMORANDUM OPINION

Defendant Kia Motors America, Inc. ("Kia"), has filed a motion for a protective order (Doc. No. 19, "Def.'s Mot."), objecting to a number of document requests served on it by Plaintiffs Mario L. Luther and Mario Luther, Inc. (collectively, "Plaintiffs.")[1] In brief, Kia argues that the document requests and any related deposition inquiries are "irrelevant to any claim or defense in the case, they are remarkably overbroad on their face and they seek to discover information that is proprietary and confidential to both [Kia] and its dealer applicants." (Def.'s Mot. at 4.)

The Court has considered the extensive briefing by both parties regarding this motion and the allegations and causes of action set forth in the Complaint. We have explicitly *not* relied on the "factual summary" set out in Plaintiffs' Response to Defendant's Motion for Protective Order (Doc. No. 21, "Plfs.'

---

[1] Counsel for Defendant certifies that he conferred with Plaintiffs' counsel on October 31, 2008, in an attempt to resolve the dispute addressed in this motion but the attempt was unsuccessful.

Resp.," at 2-3) because it contains numerous alleged "facts" which do not appear in the Complaint.

Because Plaintiffs' account of the events leading up to this litigation and their four causes of action are set forth in detail in the Court's Memorandum Opinion denying without prejudice Defendant's motion to dismiss (Doc. No. 11), and because we write only for the parties, we forgo the factual and procedural history of this matter. For the reasons discussed below, Defendant's motion is denied in part and granted in part.

## I. STANDARD OF REVIEW

The Federal Rules of Civil Procedure and precedent established by United States Court of Appeals for the Third Circuit have given broad discretion to district courts on questions of how discovery is to be managed. *See* Sempier v. Johnson & Higgins, 45 F.3d 724, 734 (3d Cir. 1995). Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, the parties

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26 (b)(2)(C).

Fed. R. Civ. P. 26(b)(1). Scope in General.

An important element of this rule is the statement extending

the scope of discovery beyond directly admissible evidence to include non-privileged information which "appears reasonably calculated to lead to the discovery of admissible evidence." In turn, "relevancy" is broadly construed and is not limited to the exact issues set out in the complaint. *See* Oppenheimer Fund v. Sanders, 437 U.S. 340, 351 (1978); *see also* Hall v. Harleysville Ins. Co., CA No. 94-6656, 1996 U.S. Dist. LEXIS 871, *3 (E.D. Pa. Jan. 29, 1996) (noting that relevance is "determined in relation to the facts and circumstances of each case.") Discovery requests are considered relevant if there is any possibility that the information sought may be relevant to the general subject matter of the action. Oppenheimer Fund, id.

As noted, Rule 26(b)(2)(C) imposes certain limitations on discovery, specifically, the court *must* limit discovery if it determines, for example, that "the discovery sought is unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(emphasis added.) The Supreme Court has emphasized that this rule gives courts "broad discretion to tailor discovery narrowly." Langbord v. United States Dep't of the Treasury, CA No. 06-5315, 2008 U.S. Dist. LEXIS 85533, *17 (E.D.

3

Pa. Oct. 22, 2008), *quoting* Crawford-El v. Britton, 523 U.S. 574, 598 (1998).

When one party objects to the scope of discovery sought by the other, the party seeking discovery must show that "the information sought is relevant to the subject matter of the action and may lead to admissible evidence." Caver v. City of Trenton, CA No. 99-1636, 2000 U.S. Dist. LEXIS 2907, *17 (D. N.J. Mar. 10, 2000). Once this showing is made, the burden shifts back to the objecting party to show why the discovery should not be permitted. Id. at *30.

## II. LEGAL ANALYSIS

In the motion now pending, Defendant objects to thirteen of Plaintiffs' first set of documents requests, specifically Requests No. 3, 4, 6, 7, 8, 9, 11, 12, 13, 15, 16, 19, and 20. Plaintiffs have failed to raise any arguments in their pleadings why Defendant's Motion should not be granted as it pertains to Requests No. 15, 16, 19, and 20; therefore, the Motion is granted in that regard, as more fully set forth in the Order accompanying this Memorandum Opinion.

### A. Requests 3 and 4

In Request No. 3, Plaintiffs seek "[a]ll Franchise Applications and dealer packages submitted to Kia's National Office within the last three years which were approved." In Request No. 4, they seek "[a]ll Franchise Applications and dealer packages submitted to Kia's National Office within the last three years

4

which were rejected, denied, or not approved." Read together, these Requests seek *every* Franchise Application and dealer package submitted to the National Office in the last three years.[2]

Kia argues that these requests are overly broad in scope, i.e., they are not geographically specific, would force the corporation to "search for thousands of documents in every region of the country," and require not only the time of Kia employees to gather the documents, but the time of Kia counsel to review them. Moreover, the information sought is confidential and proprietary, that is, the documents include details about an applicant's current and planned business operations, its business strategy, financial status, and other highly confidential information. When the confidentiality issue was pointed out to Plaintiffs' counsel, their only concession was to agree Kia could redact certain information in the documents to be produced, subject to a yet-to-be-defined agreement between the parties. (Def.'s Mot. at 5-6 and Exhibit C thereto.)

Plaintiffs offer four reasons why the information sought in these Requests is relevant. First, to the extent other Franchise Applications and dealer packages contain (or do not contain) the same information Plaintiffs were asked to provide after they were

---

[2] The Court adopts without further reference or explanation the definitions stated in Plaintiffs' First Request for Production of Documents and Things Pursuant to Fed. R. Civ. P. 34, Exhibit B to Defendant's Motion.

5

told they had been "selected" to have the dealer package submitted to the Kia National Office, this evidence will "bear[] upon the significance of the actions Plaintiffs were instructed to undertake as well as the reasonableness of Plaintiffs' reliance upon Defendant's representations." Second, "the information will speak to Defendant's intention to contract with the Plaintiffs." (Plfs.' Resp. at 4-5.) Third, based on their experience in the automotive industry, Plaintiffs believe all applications submitted to the Kia National Office are approved unless they reveal some "fatal flaw(s)" which would not be found in the documents Plaintiffs submitted; thus, the documents requested will "substantiate Plaintiffs' damages" because "Defendant's failure to fulfill its promise to submit Plaintiffs' dealer package deprive[d] Plaintiffs of the benefit of the promise," i.e., the value of the franchise and the loss of future income. Finally, Plaintiffs expect Kia to defend its decision to select another franchise applicant by suggesting there was some flaw in the dealer package Plaintiffs provided. The information covered by Requests No. 3 and 4 will allow Plaintiffs "to challenge such a suggestion or the credibility of the person providing it." (Plfs.' Resp. at 5.)

In their complaint, Plaintiffs do not allege that they relied on any written documents exchanged between themselves and Kia, including the Franchise Application and the dealer package. In fact, in opposing the motion to dismiss, they vigorously argued

6

that they explicitly were not relying on the franchise agreement, but rather on oral representations made by Kia Agents[3] to them after Mario Luther signed the franchise agreement on behalf of himself and his company on June 28, 2007. Their claims are based on the alleged breach of an oral contract to grant them a Kia franchise and/or to submit the franchise application to Kia's national office. Requests No. 3 and 4, by definition, relate only to documents submitted to the national office, not those of other would-be franchisees whose applications, like that of Plaintiffs, never reached the national office.

More importantly, Plaintiffs have failed to explain what admissible evidence they anticipate deriving from the documents sought in Requests No. 3 and 4. Let us assume for sake of argument that Plaintiffs could compare the content of their own application to that of every other application and dealer package, approved or rejected, submitted to the Kia national office for the past three years. What light would that comparison shed on the alleged oral contract that their application would be submitted to the national office, the oral contract that they had been granted or would be granted a Kia franchise, or their reliance on such oral representations? In another pleading, Plaintiffs expand on their theory that had the Kia Agents submitted the dealer application to

---

[3] This term is defined as it was in the Memorandum Opinion addressing the motion to dismiss, that is, Kia employees Barbara Robinson, Melanie Dougherty, and Deborah D'Agostino.

7

the national office as promised, Plaintiffs would have ultimately been approved for a franchise because their application was "just as good" and "just as complete" as other applications and their qualifications were equal to or exceeded those of successful franchisees. (*See* Plaintiffs' Response to Defendant's Reply, Doc. No. 25, "Plfs.' Resp. to Reply," at 2-4.) This may be correct, but it is entirely irrelevant to Plaintiffs' claims that they were damaged as a result of their justifiable reliance on Defendant's oral promises or misrepresentations.

We conclude Plaintiffs have failed to show that review of all franchise applications and dealer packages submitted to the Kia national office would reasonably be expected to lead to discovery of admissible evidence relevant to their claims. Defendant's motion for a protective order is therefore granted insofar as it applies to document Requests No. 3 and 4.

B. Requests 6 and 11; 7 and 12

In Request No. 6, Plaintiffs seek "[a]ll documents of communication [sic] between the Regional Office and National Office regarding Tri-Star," the entity which was successful in winning the dealer agreement in the Indiana/Blairsville market. In Request 11, they seek "[a]ll documents of communication [sic] within the Regional Office concerning Tri-Star, Tri-Star's Franchise Application or documents submitted by Tri-Star." Requests No. 7 and 12 parallel those in 6 and 11, seeking communications regarding

8

Bob Hawes, another applicant for the Kia franchise in question.

Plaintiffs argue that because these documents are likely to include dated communications and documents concerning the status of the three competing applications, "this information will provide insight into Defendant's intention to contract with the Plaintiffs and Defendant's intention for the Indiana/Blairsville market." The documents requested will support Counts III and IV for negligent misrepresentation because Defendant's documentation about its intent to contract with a party other than Plaintiffs and/or the state of negotiations with another party will go to the issue of whether Defendant knew the representations made to Plaintiffs were false at the time they were made. (Plfs.' Resp. at 5-6.)

In its reply in support of the motion for a protective order (Doc. No. 26, "Def.'s Reply"), Kia concedes that within this request, there may be documents which could be relevant to Plaintiffs' ability to show that when Kia Agents made certain representations to Plaintiffs, Defendant knew or had reason to know that the representations were false. Kia therefore agrees

> to produce any documents suggesting that, as of August 10, 2007, [Kia] had indicated to any other dealer candidate in the Indiana/Blairsville market that it would accept from that candidate a fuller application of the sort Plaintiffs were asked to complete where that dealer candidate remained under consideration as of August 10, 2007.

(Def.'s Reply at 5-6.)

As directed by the Court, Plaintiffs addressed this proposal

9

and agree to limit the document request to the period June 1 through November 1, 2007, when they and other potential franchisees were interacting with Defendant regarding the Indiana/Blairsville Kia franchise. (Plfs.' Resp. to Reply at 6-8.) However, they are not willing to limit the content to those documents indicating that Kia would accept a "fuller application" from another candidate for the franchise. (Id. at 9-10.)

We conclude the documents sought in Requests No. 6, 7, 11, and 12 may well be relevant to Plaintiffs' theory that Kia Agents made certain misrepresentations upon which Plaintiffs detrimentally relied despite the fact that Defendant knew at the time, based on the status of its negotiations with Tri-Star or Bob Hawes, that the franchise would not be awarded to Plaintiffs. We further conclude those documents may potentially be relevant even if they do not reflect the status of negotiations between Kia and other dealer candidates in the Indiana/Blairsville area specifically on August 10, 2007. Therefore, Defendant's motion will be denied as it applies to those specific Requests. Defendant shall produce:

> all written Communications between the Regional Office and National Office regarding Tri-Star during the period June 1, 2007, through November 1, 2007;
>
> all written Communications between the Regional Office and National Office regarding Bob Hawes during the period June 1, 2007, through November 1, 2007;
>
> all written Communications within the Regional Office concerning Tri-Star, Tri-Star's Franchise Application or documents submitted by Tri-Star during the period June 1, 2007, through November 1, 2007; and

10

all written Communications within the Regional Office concerning Bob Hawes, Bob Hawes's Franchise Application or documents submitted by Bob Hawes during the period June 1, 2007, through November 1, 2007.

Plaintiffs have no objection to redaction of confidential information in the requested documents. (Plfs.' Resp. at 7.) Therefore, the documents produced shall be redacted by Defendant to delete the same confidential or proprietary information Plaintiffs were permitted to redact from their own "Application for Kia Sales and Service Agreement" filed as a replacement exhibit "A" to Defendant's Motion to Dismiss. (*See* "Tab A" filed at Doc. No. 7.) The redaction shall apply wherever such confidential or proprietary information appears in any document produced.

C.  Requests 8, 9 and 13

In Request No. 8, Plaintiffs seek "[a]ll documents submitted by any person or entity to Defendant in support of a Franchise Application, as part of a Franchise Application, or for consideration in the establishment of a new point in the Indiana-Blairsville market." Request No. 9 seeks "[a]ll documents of communication [sic] between the Regional Office and National Office regarding establishing a 'new point' in the Indiana-Blairsville market," and Request 13 seeks "[a]ll documents of communication [sic] within the Regional Office concerning the opening of a new point in the Indiana-Blairsville market."

Although the parties offer the same arguments regarding these requests as they do regarding Requests No. 6, 7, 11, and 12, the

Court finds Requests No. 8, 9, and 13 somewhat different from those pertaining to Tri-Star and Bob Hawes. Internal communications (1) between Kia's regional and national offices or (2) within the regional office itself regarding the corporate business decision to open a franchise in the Indiana/Blairsville market would appear to have no bearing on oral representations made to a specific applicant for that franchise, no matter when those internal discussions took place. Therefore, we find Requests No. 9 and 13 overly broad and unlikely to lead to admissible evidence regarding Plaintiffs' claims. On the other hand, once the decision was made to establish "a new point," communications between Kia and potential competitors for that franchise may reveal evidence about what various applicants were asked to provide as part of the franchise application process. We conclude, however, that this discovery should be limited to the same time frame Plaintiffs have asserted is reasonable for the communications between Defendant and the two specific applicants, Tri-Star and Bob Hawes. Although the Court finds it difficult to perceive what relevance this evidence may have to Plaintiffs' claims or theories, we are inclined to grant document Request No. 8, as modified, given the generally liberal discovery rules. *See* Hall, 1996 U.S. Dist. LEXIS 871, *3, commenting that if there is doubt about relevance, a court should tend toward permitting discovery. Therefore, Defendant shall produce:

all documents submitted by any person or entity to Defendant in support of a Franchise Application, as part of a Franchise Application, or for consideration in the process of establishing a new point in the Indiana/ Blairsville market, during the period June 1, 2007, through November 1, 2007.

The documents produced pursuant to Request No. 8 shall be redacted similarly to those produced under Requests No. 6, 7, 11 and 12.

An appropriate Order follows.

December __/3__, 2008    _William L. Standish_
                         William L. Standish
                         United States District Judge

13